UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TREMAINE JOHNSON,

                        Plaintiff,

                                              MEMORANDUM & ORDER
            -against-                         13-CV-2464(JS)(GRB)

LONG ISLAND UNIVERSITY,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:        Gregory R. Preston, Esq.
                      Preston & Wilkins, PLLC
                      3000 Hempstead Turnpike, Suite 317
                      Levittown, NY 11756

For Defendant:        Matthew Aaron Siebel, Esq.
                      Long Island University
                      700 Northern Boulevard
                      Greenvale, NY 11548

SEYBERT, District Judge:

            Plaintiff Tremaine Johnson ("Plaintiff") commenced this

action against his current employer, defendant Long Island

University ("LIU"), alleging disparate treatment and hostile work

environment on account of his race and gender in violation of:

(1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e et seq.; (2) 42 U.S.C. § 1981; and (3) the New York

State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 et seq.

Currently pending before the Court is LIU's motion to dismiss the

Complaint for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6). (Docket Entry 5.) For the following

reasons, LIU's motion to dismiss is GRANTED IN PART and DENIED IN PART.

BACKGROUND

I.    Factual Background[1]

Plaintiff is an African-American male currently employed by LIU, a private university in Greenvale, New York. (Compl. ¶¶ 3-4.) In 2012, Plaintiff applied for the positions of Assistant Director of Residence Life and Resident Hall Director. (Compl. ¶ 9.) LIU hired Plaintiff for the Hall Director position. (Compl. ¶ 10.) However, Plaintiff claims that LIU did not interview him for the Assistant Director position even though he was qualified for that position and instead gave the position to a less-qualified individual, Sean Lazarus ("Lazarus"). (Compl. ¶¶ 11-12.) The Complaint does not identify Lazarus' race but it does allege that Shana Eustacy was only one other African American "staff member" at LIU besides Plaintiff. (Compl. ¶ 20.)

The Complaint then alleges several incidents during the course of Plaintiff's employment that Plaintiff claims constitute disparate treatment and/or created a hostile work environment on account of his race and gender. In June 2011, Jennifer Fuoco ("Fuoco"), LIU's Associate Director of Residence Life, allegedly

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

told Plaintiff that he could not wear shorts, jeans, or sneakers while working. (Compl. ¶ 15.) However, "days later," Plaintiff observed Fuoco wearing capris. (Compl. ¶ 16.) When Plaintiff "asked if that meant he could at least wear Khaki shorts," Fuoco said "no" because, according to Fuoco, "dressing in cool temperature attire was a women thing." (Compl. ¶ 16.) Plaintiff also alleges that he later observed Yuri Gulzman "[come] to a mandatory Resident Assistant training session to teach a course in shorts and sneakers, while others like [Plaintiff] was [sic] dressed in business casual attire." (Compl. ¶ 17.) He similarly claims that Dan Ugenti ("Ugenti") "wore shorts and sneakers during his scheduled office hours when it was communicated to [Plaintiff] that the dress code even during the summer was the standard attire of slacks, collared shirt, and dress shoes." (Compl. ¶ 18.)

In September 2011, Plaintiff asked Fuoco "about working with the athletic department." (Compl. ¶ 19.) Fuoco advised Plaintiff that he was not allowed to work with athletic teams during "the scheduled work hours" of 9:00 a.m. to 5:00 p.m. and that he also could not receive compensation for working with other departments on campus. (Compl. ¶ 19.) However, Plaintiff claims that "[s]imilarly situated employees who are not in a protected class . . . were not also restricted." (Compl. ¶ 19.) As an example, during the 2012 spring semester, Kelly Carpino "interned for a non-student affair related organization" two to three times

per week, which required her to leave work at 1:00 p.m. (Compl. ¶ 19.) Additionally, during the 2012 fall semester, Lazarus and Ugenti allegedly taught "College 101" courses during the day for compensation. (Compl. ¶ 20.)

Plaintiff also complains that LIU denied his requests "for special projects and trainings" but provided such training to other, unidentified "similarly situated employees." (Compl. ¶ 13.) Similarly, during the 2012 fall semester, Plaintiff spoke to two officials in LIU's athletic department about volunteering for the department but "neither [official] would return his emails or phone calls." (Compl. ¶ 35.)

In the Spring of 2012, Plaintiff was injured during a student-staff basketball game and was out of work for five months on workers compensation. (Compl. ¶ 22.) When he returned to work in September 2012, LIU required him to make up the time he missed. (Compl. ¶¶ 21, 24.) This required Plaintiff "to take seven (7) weeks of duty during the fall semester" while "no other Residence Hall Directors had to take more than 2 weeks." (Compl. ¶ 23.) When Plaintiff complained that he was experiencing pain due to the increased duty schedule, Fuoco "stated that she had spoken with a Human Resources representative . . . and was told if [Plaintiff] was unable to do duty, then he could not keep his position." (Compl. ¶¶ 26-27.)

Plaintiff also received a performance review upon his return in September 2012. (Compl. ¶ 31.) According to Plaintiff, he was told that "he needed improvement" "in the area of student life involvement." (Compl. ¶ 31.) Additionally, Fuoco "referred to [Plaintiff] as a schmoozer because he interacted with the other departments on a regular basis," and he "was told that he needed to focus more on administrative duties than schmoozing with other departments." (Compl. ¶ 31.) He "was given an average for professional etiquette," which was the same score given to Ugenti. (Compl. ¶ 32.)

Plaintiff additionally alleges that on November 4, 2012, he "wanted to leave after work and go vote in Brooklyn," but he "was unable to vote in fear of losing his job." (Compl. ¶ 33.) Thus, Plaintiff "left campus at 2 pm to make an attempt to vote and was required to take a half day of work." (Compl. ¶ 34.) However, his co-workers, Scott Towers and Dan Caccavale, left the campus at 12:00 p.m., did not return until after 5:00 p.m., and were not "required to take a half day." (Compl. ¶ 34.)

The Complaint is not entirely clear but Plaintiff also appears to allege that he was not able to take pain medication while he was on duty because it would make him drowsy and therefore unable to respond to potential emergency phone calls during the night. (Compl. ¶¶ 29-30.) He claims that an unidentified individual "expressed to all Residence Hall Directors that if they

[could not] be reached on duty their job would be in jeopardy,"
and that on November 1, 2012, Fuoco allegedly did not respond to
a call while she was on duty because she took medication that
caused her to fall into a "deep sleep." (Compl. ¶ 30)

Finally, in the Fall of 2011, Fuoco accused Plaintiff of
having knowledge concerning an "inappropriate" relationship
between a fellow hall director and a student and told him that "he
may be disciplined for not being forth coming [sic] with
information." (Compl. ¶ 39.) Fuoco advised him that hall
directors were not "allowed to have personal relationships with
students." (Compl. ¶ 40.) Plaintiff claims that another hall
director has a "known relationship" with a current student.
(Compl. ¶ 41.)

II. Procedural Background

Plaintiff filed an administrative complaint with the
Equal Employment Opportunity Commission ("EEOC") alleging
discrimination on account of race and disability. (Siebel Decl.,
Docket Entry 6, Ex. D.) On or about January 29, 2013, Plaintiff
received a "Notice of Right to Sue" from the EEOC. (Compl. ¶ 7.)
On April 23, 2013, Plaintiff filed the Complaint in this action,
which includes claims for disparate treatment and hostile work
environment based on race and gender under Title VII, Section 1981,

and the NYSHRL.[2] (Compl. ¶¶ 44-64.) LIU's motion to dismiss is currently pending before the Court. (Docket Entry 5.)

DISCUSSION

The Court will first set forth the applicable legal standard before turning to LIU's motion to dismiss more specifically.

## I.  Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific

---

[2] Plaintiff has voluntarily discontinued his claims under the New York City Human Rights Law, N.Y. CITY ADMIN. CODE § 8-107 et seq. (See Pl.'s Opp. Br., Docket Entry 11, at 5 n.1.)

task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II.   Timeliness of Title VII Claims

As an initial matter, LIU argues that some of Plaintiff's Title VII claims are time-barred. (Def.'s Br., Docket Entry 5-2, at 7-8, 15.)   The Court agrees.

"An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." Petrosino v. Bell Atl., 385 F.3d 210, 219 (2d Cir. 2004) (citing Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133 (2d Cir. 2003)). Under Title VII, "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'" Lewis v. N.Y. City. Transit Auth., --- F. Supp. 2d ----, 2014 WL 1343248, at *10 (E.D.N.Y. Mar. 31, 2014) (first set of internal quotation marks omitted) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)). Thus, "Title VII 'precludes recovery for discrete acts of discrimination . . . that occur outside the statutory time period, irrespective of whether other acts of discrimination occurred within the statutory time period.'" Jagmohan v. Long Island R.R. Co., No. 12-CV-3146, 2014 WL 4417745, at *8 (E.D.N.Y. Sept. 8, 2014) (emphasis and ellipsis in original)

(quoting <u>Mark v. Brookdale Univ. Hosp.</u>, No. 04-CV-2497, 2005 WL 1521185, at *16 (E.D.N.Y. June 22, 2005)).

Because Plaintiff filed his EEOC charge on January 22, 2013, any conduct occurring before March 28, 2012 is time-barred and cannot serve as the basis for a Title VII claim. LIU argues that several allegations in the Complaint are untimely under Title VII, including that LIU failed to interview and hire Plaintiff for the Associate Director position; that Fuoco told Plaintiff that he could not wear shorts, jeans, and sneakers to work; that Fuoco reprimanded Plaintiff for allegedly withholding information; and that Fuoco told Plaintiff he could not work with other departments on campus. (Def.'s Br. at 7.) Plaintiff does not argue that these allegations are timely, nor does he argue that any of these allegations are saved by the continuing violation doctrine. Rather, he argues that these allegations may be used as background evidence to support his timely Title VII claims. (Pl.'s Br. at 13.)

Plaintiff is correct that Title VII "does not 'bar an employee from using . . . prior acts [that are untimely] as background evidence in support of a timely claim.'" <u>Jagmohan</u>, 2014 WL 4417745, at *8 (alteration in original) (quoting <u>Morgan</u>, 536 U.S. at 113); <u>see</u> <u>also</u> <u>id.</u> ("[B]ecause plaintiff filed the EEOC charge on February 24, 2011, any acts occurring on or after April 30, 2010, are timely under Title VII. Earlier acts, such as

the May 2008 reassignment and alleged lack of promotion in November 2008, are timebarred, but they may be used as background evidence."). However, the Court will defer ruling on whether these allegations may be introduced as background evidence at trial, a question that is more appropriately decided in a pre-trial motion in limine. Accordingly, LIU's motion to dismiss is GRANTED insofar as it seeks dismissal of Title VII claims that seek recovery for discrete acts of discrimination occurring before March 28, 2012. Any such claims are therefore DISMISSED WITH PREJUDICE.[3]

## III.  Exhaustion of Administrative Remedies

LIU also argues that Plaintiff's Title VII claims based on gender must be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to those claims. (Def.'s Br. at 14-15.)  The Court agrees.

---

[3] However, these claims may be asserted under Section 1981 and the NYSHRL to the extent they fall within the statutes of limitations for those statutes.  See Johnson v. Cnty. of Nassau, No. 10-CV-6061, 2014 WL 4700025, at *17 (E.D.N.Y. Sept. 22, 2014) ("[W]hereas Title VII claims must be filed within 300 days of an EEOC filing, New York's three-year statute of limitations governs the timeliness of claims brought under Sections 1981 . . . ."); Armstrong v. Metro. Transp. Auth., No. 07-CV-3561, 2014 WL 4276336, at *14 (S.D.N.Y. Aug. 28, 2014); Mitchell-Miranda v. City of N.Y., No. 08-CV-4031, 2011 WL 1210202, at *10 n.3 (S.D.N.Y. Mar. 24, 2011) ("The statute of limitations for a violation of the NYSHRL is three years, rather than 300 days measured from the date of the violation to the filing of the administrative complaint as is true for claims under Title VII . . . .").

As noted above, a party wishing to bring a claim under Title VII in federal court must first file an administrative complaint with the EEOC and obtain a right to sue letter from the EEOC. "'A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge.'" McClain v. N.Y. State Dept. of Taxation & Fin., No. 13-CV-3104, 2014 WL 4101517, at *5 (E.D.N.Y. Aug. 18, 2014) (quoting Butts v. N.Y. City Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)). A claim is "'reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)).

Here, Plaintiff's EEOC charge alleges that LIU discriminated against him based on his race and disability, (see Siebel Decl. Ex. D.),[4] and Plaintiff's new claims based on gender

---

[4] Neither party has produced the actual administrative complaint Plaintiff filed with the EEOC. LIU instead has produced the "Notice of Charge of Discrimination" prepared by the EEOC, which indicates that Plaintiff alleged only race and disability discrimination. (Siebel Decl. Ex. D.) However, Plaintiff does not dispute that his charge only alleged discrimination based on race and disability, and not based on gender. (Pl.'s Br. at 16 ("Plaintiff's claim of gender discrimination is actionable under the NYSHRL, although he did not raise the issue in his EEOC Charge of Discrimination.").

are not reasonably related to the race and disability claims asserted in the EEOC charge.  See Faber-Womack v. Town of Riverhead Police Dept., No. 08-CV-2368, 2009 WL 2983022, at *3 (E.D.N.Y. Sept. 10, 2009) (dismissing Title VII gender-based discrimination claims because the plaintiff failed to include such allegations in her EEOC charge and the allegations were not reasonably related to race-based discrimination claims asserted in EEOC charge). Accordingly, LIU's motion to dismiss insofar as it seeks dismissal of Plaintiff's Title VII claims based on gender for failure to exhaust administrative remedies is GRANTED.  These claims are DISMISSED WITH PREJUDICE.

## IV.  Discrimination Claims

The Court now turns to whether Plaintiff has stated plausible discrimination claims.  As noted, Plaintiff alleges that LIU failed to hire him for the Associate Director position and subjected him to disparate treatment on account of his race and gender in violation of Title VII, Section 1981, and the NYSHRL. "Disparate treatment claims brought under Title VII, Section 1981, and the NYSHRL are all analyzed under the same standard."  Parra v. City of White Plains, No. 13-CV-5544, 2014 WL 4468089, at *7 (S.D.N.Y. September 4, 2014) (citing Bowen-Hooks v. City of N.Y., No. 10-CV-5947, 2014 WL 1330941, at *16 & n.19 (E.D.N.Y. Mar. 31, 2014)); see also Vivenzio v. City of Syracuse, 611 F.3d 98, 106

(2d Cir. 2010).  Thus, the Court will provide a singular discussion of Plaintiff's claims.[5]

Title VII prohibits discrimination based on, <u>inter alia</u>, race or sex "with respect to . . . compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1).  Title VII employment discrimination claims are analyzed using the burden-shifting framework articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  That framework requires a plaintiff to first establish a prima facie case of discrimination.  To do so, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination."  <u>Reynolds v. Barrett</u>, 685 F.3d 193, 202 (2d Cir. 2012) (alteration in the original) (quoting <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 491-92 (2d Cir. 2010)).  With respect to

---

[5] However, "'Section 1981 does not prohibit discrimination on the basis of gender' . . . and instead only prohibits discrimination based on race." <u>Petrisch v. HSBC Bank USA, Inc.</u>, No. 07-CV-3303, 2013 WL 1316712, at *20 (E.D.N.Y. Mar. 28, 2013). Additionally, the Court notes that "[t]he major distinction between claims brought under Section 1981 and Title VII is that Section 1981 provides for individual liability on the part of non-employers." <u>De La Peña v. Metro. Life Ins. Co.</u>, 953 F. Supp. 2d 393, 409 (E.D.N.Y. 2013).  To the extent that there are other differences between Section 1981 and Title VII, neither party has raised them with the Court.

a prima facie case of failure to hire based on disparate treatment, a plaintiff similarly must demonstrate "(i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Penn v. N.Y. Methodist Hosp., No. 11-CV-9137, 2013 WL 5477600, at *12 (S.D.N.Y. Sept. 30, 2013) (internal quotation marks and citation omitted).

However, in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), the Supreme Court held that a plaintiff in an employment discrimination case need not plead facts establishing a prima facie case of discrimination under McDonnell Douglas in order to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 510 ("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). Rather, "the ordinary rules for assessing the sufficiency of a complaint apply." Id. at 511.

Swierkiewicz preceded Twombly and Iqbal, however, and therefore relied on the more lenient notice pleading standard first articulated in Conley v. Gibson, 355 U.S. 41 (1957), which Twombly and Iqbal rejected. See Swierkiewicz, 534 U.S. at 512 (An employment discrimination complaint "must simply 'give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting Conley, 355 U.S. at 47)). Thus, the Second Circuit recently stated that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." Hedges v. Town of Madison, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order).  Although it declined to resolve the issue,[6] the Second Circuit did state that "Swierkiewicz's reliance on Conley suggests that, at a minimum, employment discrimination claims must meet the standard of pleading set forth in Twombly and Iqbal, even if pleading a prima facie case is not required." Hedges, 456 F. App'x at 23.  Thus, reconciling Swierkiewicz with the standards set forth in Twombly and Iqbal, in the employment discrimination context, "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss [but] the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks and citation omitted); accord King v. U.S. Sec. Assocs., Inc., No. 11-CV-4457, 2012 WL 4122025, at *4 (S.D.N.Y. Aug. 22, 2012), adopted by 2012 WL 4327396 (S.D.N.Y. Sept. 18, 2012).  "A claim has facial

---

[6] "We need not resolve these conflicts here, however, for Hedges's claims fail any conceivable standard of pleading." Hedges, 456 F. App'x at 23.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Turkman v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009). "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a prima facie case." King, 2012 WL 4122025, at *5 (collecting cases).

Here, LIU does not dispute the first two elements of Plaintiff's discrimination claims--i.e., (1) that Plaintiff, as an African American, is a member of a protected class, and (2) that Plaintiff was qualified for his position and the Associate Director position that he applied for. Instead, LIU contends that Plaintiff has not plausibly alleged (1) an adverse employment action (with the exception of LIU's failure to hire Plaintiff for the Associate Director position), or (2) that any of the alleged conduct occurred under circumstances giving rise to an inference of discrimination. (Def.'s Br. at 8-13.) The Court will address each element in turn.

### 1. Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be considered materially adverse, the change must be "more disruptive than a mere inconvenience or an alteration in job responsibilities." Id. (internal quotation

marks and citation omitted). The Second Circuit has held that such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." Id.; see also Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006).

The Complaint lists several incidents that Plaintiff claims were adverse employment actions: (1) LIU denied Plaintiff's requests for "special projects and training" (Compl. ¶ 13); (2) the athletic department never returned his phone calls or e-mails regarding his desire to perform volunteer work (Compl. ¶ 35); (3) he complied with LIU's dress code and some of his co-workers did not (Compl. ¶¶ 15-18); (4) he received a negative performance evaluation (Compl. ¶¶ 31-32); (5) Fuoco reprimanded him for allegedly withholding information regarding an inappropriate relationship between a fellow hall director and a student (Compl. ¶ 39); (6) he took a half day off from work to go vote while other co-workers left work to vote without taking any time off (Compl. ¶¶ 33-34); (7) he could not take pain medication while he was on duty (Compl. ¶¶ 28-30); (8) LIU required him to make up the time he missed while he was on workers compensation, which resulted in seven weeks of duty for him while other hall directors only had two weeks of duty (Compl. ¶¶ 21, 24); (9) LIU failed to interview

17

and hire him for the Associate Director position and hired a less-qualified individual outside of his protected class instead (Compl. ¶¶ 9-12); and (10) Fuoco told him that he could not work with other departments on campus during his work hours or for compensation but other similarly situated employees outside of his protected class were not similarly restricted (Compl. ¶¶ 19-20).

As noted, LIU concedes that its decision not to hire Plaintiff for the Associate Director position was an adverse employment action but argues that the remaining allegations do not plausibly allege adverse employment actions. For the following reasons, only those allegations that LIU required Plaintiff to take extra duty and that LIU would not allow Plaintiff to work for other departments for compensation plausibly describe adverse employment actions.

Plaintiff's allegation that he adhered to a dress code while others did not amounts to nothing more than a complaint regarding a mere inconvenience, not an adverse employment action. See McKenzie v. Gibson, No. 07-CV-6714, 2008 WL 3914837, at *2-3 (S.D.N.Y. Aug. 25, 2008) (dismissing Title VII gender discrimination claim based on employer's "policy in which male employees could wear jeans to work while female employees could not" because the plaintiff "fail[ed] to allege any facts that suggest[ed] that th[e] policy altered the terms or conditions of [the plaintiff's] employment beyond 'just a mere inconvenience'"

(citation omitted)).  Similarly, Plaintiff's allegations regarding
his negative performance review and Fuoco's reprimand also do not
describe adverse employment actions because Plaintiff fails to
allege that he suffered any material negative consequences in the
terms of his employment as a result of either incident.  See Parra,
2014 WL 4468089, at *8 (granting motion to dismiss Title VII race
discrimination claim because, inter alia, "[r]eprimands, threats
of disciplinary action and excessive scrutiny do not constitute
adverse employment actions in the absence of other negative results
such as a decrease in pay or being placed on probation" (internal
quotation marks and citation omitted)); see also Frankel v. City
of N.Y., Nos. 06-CV-5450, 07-CV-3436, 2009 WL 465645, at *3
(S.D.N.Y. Feb. 25, 2009) ("Plaintiff's negative performance
evaluations do not constitute adverse employment actions."); Meder
v. City of N.Y., No. 05-CV-0919, 2007 WL 1231626, at *12 (E.D.N.Y.
Apr. 27, 2007) (holding that "written and oral
criticisms . . . even if unjustified, are not adverse employment
actions").

    Plaintiff's claim that he was unable to vote without
taking time off from work while his co-workers left work to vote
without taking time off also fails to describe an adverse
employment action.  Plaintiff alleges that he took time off from
work to go vote because he was afraid of losing his job but the
Complaint does not allege that anyone at LIU told him that he could

19

not leave work to go vote, nor does it allege that LIU permitted Plaintiff's co-workers to leave work without taking time off. Plaintiff's subjective fear of losing his job absent an allegation regarding conduct by LIU is insufficient to state an adverse employment action. Plaintiff's claim that he could not take medication while he was on duty similarly fails to state an adverse employment action because the Complaint does not actually allege that LIU took any action with respect to Plaintiff in this regard.

Plaintiff's allegations that LIU denied him special projects, professional training, and volunteer work also fail to state an adverse employment action because the denial of professional training opportunities may constitute an adverse employment action "only where an employee can show material harm from the denial, such as a failure to promote or a loss of career advancement opportunities." Trachtenberg v. Dept. of Educ. of City of N.Y., 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (emphasis added) (internal quotation marks and citation omitted). Here, Plaintiff has not alleged any material harm resulting from the alleged denial of special projects, professional training, or volunteer work, and therefore, these allegations do not plausibly state an adverse employment action. See id. ("[Plaintiff] has not alleged any negative consequences resulting from the alleged denial of professional training, and therefore any such denial does not rise to the level of an adverse employment action.");

<u>Sekyere v. City of N.Y.</u>, No. 05-CV-7192, 2009 WL 773311, at *4 (S.D.N.Y. Mar. 18, 2009) ("Plaintiff does not contend that her position was altered in any way by not receiving some specific training, nor does she contend that she was disciplined, demoted, transferred, or terminated for lack of some fundamental knowledge that should have been provided for her through training. Accordingly, any failure by Defendants to provide Plaintiff with training does not rise to the level of an adverse employment action.").

However, the Court finds that Plaintiff's claim that LIU would not allow him to work with other departments on campus does state an adverse employment action. This claim, unlike the allegations regarding the mere denial of training and volunteer work, alleges that Plaintiff was denied the opportunity to earn additional compensation that other similarly situated employees were permitted to earn. This states an adverse employment action.

The Court also finds that Plaintiff's complaint regarding his duty schedule in the Fall of 2012 is also sufficient to plausibly allege an adverse employment action. "Where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." <u>Williams v. Ford Motor Co.</u>, No. 12-CV-0411, 2014 WL 1572302, at *13 (W.D.N.Y. Apr. 18, 2013) (collecting cases). However, the

Second Circuit has held that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action. <u>Feingold v. New York</u>, 366 F.3d 138, 152–53 (2d Cir. 2004). Here, Plaintiff alleges that LIU required him to make up the time he missed while he was on workers compensation, which resulted in seven weeks of duty for him while other hall directors only had two weeks of duty. This allegation, if true, would demonstrate that Plaintiff suffered an adverse employment action.

In sum, only those allegations that LIU required Plaintiff to take extra duty and that LIU would not allow Plaintiff to work for other departments for compensation plausibly describe adverse employment actions.

## 2. Inference of Discrimination

Having found that Plaintiff has stated adverse employment actions, the Court will now assess whether Plaintiff has alleged facts sufficient to support an inference of discrimination for each alleged adverse employment action. The Court finds that Plaintiff has.

A plaintiff can show circumstances giving rise to an inference of discrimination in a variety of ways, including "by relying on the theory of disparate treatment; that is, by showing that [his] employer treated [him] less favorably than a similarly situated employee outside [his] protected group." <u>Risco v. McHugh</u>, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012). "'If a comparison with

another employee is to lead to an inference of discrimination it is necessary that the employee be similarly situated in all material respects.'" Parra, 2014 WL 4468089, at *8 (quoting Staff v. Pall Corp., 233 F. Supp. 2d 516, 536 (S.D.N.Y. 2002), aff'd, 76 F. App'x 366 (2d Cir. 2003)).

Here, Plaintiff alleges that he was denied the opportunity to work with other departments on campus for compensation while other "[s]imilarly situated employees who are not in a protected class . . . were not also restricted." (Compl. ¶ 19.) The Complaint identifies at least two other employees who were permitted to work for compensation during work hours. He additionally alleges that he had to work more than other hall directors. Although the Complaint is sparse on specifics with respect to how his colleagues are similarly situated to him, the Court finds that Plaintiff has stated a plausible inference of discrimination based on disparate treatment with respect to the claims that LIU treated him differently by denying him the opportunity to earn additional compensation and by assigning him significantly more work than his fellow hall directors, but just barely. See Trachtenberg, 937 F. Supp. 2d at 471 (denying motion to dismiss even though the complaint was "thin on specifics--both as to how each comparator [was] similarly situated to [Plaintiff] and what disparate treatment he or she was subjected to.").

Plaintiff also has stated a plausible inference of discrimination related to his failure to hire claim. He alleges that he was qualified for the Assistant Director position and that he applied for it but that LIU failed to interview him and instead gave the position to Lazarus, a less-qualified individual outside of Plaintiff's protected class. LIU takes issue with the fact that the Complaint does not identify Lazarus' race but the Complaint also alleges that there was only one other African American staff member at LIU, and LIU does not dispute that Lazarus is not in Plaintiff's protected class. The Complaint is by no means a model of clarity. However, it provides enough detail to support an inference of discrimination with respect to the failure to hire claim. See Butts v. N.Y. City Dep.t of Housing Preserv. & Dev., No. 00-CV-6307, 2007 WL 259937, at *9 (S.D.N.Y. Jan. 29, 2007) ("An employer's choice of a less qualified employee not from Plaintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination . . . ."), aff'd, 308 F. App'x 596 (2d Cir. 2009).

In sum, the Court finds that Plaintiff has adequately alleged that he suffered adverse employment actions that were accompanied by inferences of discrimination based on race when LIU denied him the opportunity to work for other departments for compensation, assigned him a disproportionate amount of work, and failed to hire him for the Associate Director position. These

claims will proceed to discovery. However, Plaintiff has not alleged any adverse employment actions that were accompanied by inferences of gender discrimination, and any such claims are therefore DISMISSED WITH PREJUDICE.

V.    Hostile Work Environment Claims

Plaintiff also brings hostile work environment claims under Title VII, Section 1981, and NYSHRL. As discussed below, the Court finds the allegations of the Complaint fail to state a hostile work environment.

"A hostile work environment arises 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" El v. N.Y. State Psychiatric Inst., No. 13-CV-6628, 2014 WL 4229964, at *5 (S.D.N.Y. Aug. 19, 2014) (brackets omitted) (quoting Morgan, 536 U.S. at 116). To state a claim for hostile work environment,

> a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive--that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment

because of the plaintiff's [protected characteristic]."

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (ellipsis in original) (quoting Gregory v. Daly, 243 F.3d 687, 691–92 (2d Cir. 2001)). "[A] work environment's hostility should be assessed based on the 'totality of the circumstances.'" Id. at 113 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). In assessing the totality of the circumstances, a court might consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks and citation omitted).

As best the Court can tell, Plaintiff appears to claim that Fuoco created a hostile work environment on account of his gender when she told him that he could not wear shorts and that "dressing in cool temperature attire was a women thing." (Compl. ¶ 16.) Plaintiff also appears to allege that LIU created a race-based hostile work environment based on the adverse employment actions outlined in the previous section of this Memorandum and Order. These allegations of conduct, either individually or collectively, come nowhere close to the type and frequency of conduct sufficient to create a hostile work environment. See

Alfano v. Costello, 294 F.3d 365, 379–80 (2d Cir. 2002) (collecting cases in which courts have and have not found sufficient evidence of a hostile work environment). Accordingly, LIU's motion to dismiss the hostile work environment claims is GRANTED and these claims are DISMISSED WITH PREJUDICE.

## VI. Leave to Replead

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir.1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)). Here, the Court will grant Plaintiff leave to replead his claims that LIU discriminated against him when it denied him training opportunities and when he received a negative performance review. However, the Court will not grant Plaintiff leave to replead any other deficiencies identified in the Complaint since amendment would be futile.

## CONCLUSION

For the foregoing reasons, LIU's motion to dismiss (Docket Entry 5) is GRANTED IN PART and DENIED IN PART. LIU's motion to dismiss is GRANTED as to (1) Plaintiff's Title VII claims based on conduct occurring prior to March 28, 2012; (2) Plaintiff's Title VII, Section 1981, and NYSHRL claims based on gender; (3) Plaintiff's Title VII, Section 1981, and NYSHRL claims based on allegations that do not state adverse employment actions, as explained above; and (4) Plaintiff's hostile work environment claims. All of these claims are DISMISSED WITH PREJUDICE except that Plaintiff is granted leave to replead certain adverse employment actions identified in this Memorandum and Order. If Plaintiff wishes to replead, he must do so within thirty (30) days of the date of this Memorandum and Order. If he fails to do so, claims based on these alleged adverse employment actions will be dismissed with prejudice.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      September __30___, 2014
            Central Islip, NY